UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROMIK PARUNAKYAN,

Petitioner,

v.

WARDEN OF OTAY MESA
DETENTION CENTER,

Respondent.

Case No.:  25cv3739-LL-MSB

**ORDER GRANTING IN PART FOR
WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

Before the Court is Petitioner Romik Parunakyan's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's Order to Show Cause, Respondents filed a Return to the Petition. ECF No. 4. For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition.

## I.    BACKGROUND

Petitioner is a detainee in the custody of the U.S. Department of Homeland Security, Immigration and Customs Enforcement. On December 23, 2025, he filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Petitioner has been detained since December 14, 2024, and alleges that his detention violates the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act. Pet. 4, 6-7. He is currently being held at Otay Mesa

detention center. He alleges that he is under "constant medical care" and "has problems with elevated blood pressure, hypertension, suicidal ideation, tinea pedis, history of hunger, [and his] symptoms [have] exacerbated due to continued detention." *Id*. at 7. He states that he is challenging his "detention without bond hearing, because Immigration Judge 'has no jurisdiction' even if detention is prolonged." *Id.* at 2. He states that his "individual hearing has been reset three times." *Id.* at 6. Specifically, he states that he "started his merits hearing on July 29, 2025 and direct examination was concluded." *Id.* He asserts that the "hearing was unreasonably delayed to October 30, 2025" when the Immigration Judge Paula Dixon was terminated "causing again unreasonable delay in process to March 20, 2026." *Id*. He seeks a writ of habeas corpus directing Respondents to immediately release him from custody or alternatively, a bond hearing.

Respondents' Return to the Petition raises several issues: (1) Petitioner's claim is jurisdictionally barred by 8 U.S.C. § 1252; (2) as an arriving alien found to have a credible fear of persecution, Petitioner's detention is mandated by 8 U.S.C. § 1225(b)(1)(B)(ii) until the conclusion of his removal proceedings; (3) Petitioner's detention is not unconstitutionally prolonged. ECF No. 6. The Court will address each of these issues in turn.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview

of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

### a. Jurisdiction

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). Return at 3-4. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims arise from DHS's decision to commence removal proceedings. Return at 3. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings"). Accordingly, the Court finds that the jurisdiction stripping provision of 8 U.S.C. § 1252(g) does not strip it of jurisdiction to hear Petitioner's claims.

### b. Detention under § 1225 and Length of Detention

Respondents argue that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225(b) because he was detained at the border as an "applicant for admission" and he has never been granted any form of parole. ECF No. 4 at 4-5. Further, Respondents argue that Petitioner's detention has not become constitutionally prolonged. *Id.* at 5-9.

The Court agrees that Petitioner was detained at the border and has not been granted any form of parole, so Respondents have the authority to detain him under § 1225(b). However, the Court disagrees that no due process violation can arise, as Respondents claim. ECF No. 4 at 4-10. Respondents essentially argue that § 1225(b) provides no limitation on the length of detention and that the statute provides all the due process that the petitioner is owed. *Id.* This position has been called into question by the Ninth Circuit:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (alteration in original). Indeed, numerous district courts have found that prolonged mandatory detention at some point will raise due process considerations. *See Maksim v. Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.") (internal citation omitted); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. Nov. 4, 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). Further, even Respondents recognize in their Return that district courts within this Circuit have found a potential due process

violation to arise when the detention has become too prolonged. *See id.* at 9-11 (citing *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. Sept. 29, 2022) and analyzing factors).

"Neither the Ninth Circuit nor the Supreme Court have provided guidance regarding the point at which an immigration detainee's prolonged mandatory detention becomes unconstitutional." *Amado v. United States Dep't of Just.*, No. 25CV2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025). Thus, district courts within this Circuit have employed similar but slightly varying tests. In the *Lopez* case cited by Respondents, the court employed a test with three factors to decide when mandatory detention under § 1226(c) becomes unconstitutionally prolonged: "the total length of detention to date, the duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." 631 F. Supp. 3d at 879. In *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. June 12, 2019), the district court considered the following six factors in the § 1225(b) context: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." Other courts have simply applied the generalized *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process test. *See Henriquez v. Garland*, No. 22-cv-869-EJD, 2022 WL 2132919, at *5-6 (N.D. Cal. June 14, 2022).

The Court finds it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1226(b), as other courts within this district have done in the past.[1] *See, e.g.*, *Amado*, 2025 WL 3079052, at *5 (applying 6-factor *Banda* test to mandatory detention under § 1226(b)); *Kadir v. LaRose*, 25CV1045-LL-MMP, 2025 WL 2932654 (S.D. Cal.

---

[1] Even though the Court does not employ the *Lopez* test as Respondents cite, the Court notes that the *Lopez* factors are a subset of the *Banda* factors. Based on a discussion of the *Banda* factors below, the Court would reach the same conclusion even if it were to consider solely the *Lopez* factors because it finds the first two *Lopez* factors to weigh in favor of Petitioner and the last factor to be neutral.

Oct. 15, 2025) (same); *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *4 (S.D. Cal. Sept. 26, 2025); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025).

The first *Banda* factor, the length of detention, is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Petitioner has been detained since December 14, 2024, so his detention exceeds the one-year mark. While this factor itself is not dispositive, the length now is within the range such that this factor should weigh in favor of Petitioner. *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" (citing cases) and finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi*, 2025 WL 3154520, at *3 (though "almost 12 months" detention was not dispositive, finding it to weigh in favor of petitioner); *Gao*, 2025 WL 2770633, at *5 ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted). In even the *Lopez* case cited by Respondents, that court found a detention of "approximately one year" to weigh in favor of the petitioner and recognizing that "[d]istrict courts have found shorter lengths of detention . . . without a bond hearing to be unreasonable." Thus, this first and most important factor weighs in favor of Petitioner.

The second *Banda* factor is the likely duration of future detention, and considers "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. Here, Respondents claim that Petitioner has an upcoming hearing on March 20, 2026. ECF No. 4 at 3 (citing Exhibit 3). The records indicate that after Petitioner was put in removal proceedings, he had an initial hearing on

July 29, 2025, and there is no information regarding what kind of hearing this March 2026 hearing will be, particularly whether it will even result in a final decision in his removal proceedings. Even if it were, however, a removal order may not become final until after the appeals Petitioner could file, to both the Board of Immigration Appeals and Ninth Circuit. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) ("The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. . . . If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals."). These appeals can take a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer). In *Banda*, the petitioner had a final removal order from an IJ and had just filed an appeal to the BIA, and the court still found that this factor favored the petitioner. Here, Petitioner's removal is not even yet final, so the Court finds even more reason to find that this factor falls in his favor.

The third *Banda* factor is regarding the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *See Kydyrali*, 499 F. Supp. 3d at 773; *Amado*, 2025 WL 3079052, at *6. Also, Petitioner states that he has been "under constant medical care in the Otay Mesa Detention Facility." Pet. at 7. Petitioner further states that his medical records will reflect that he "has problems with elevated blood pressure, hypertension, suicidal ideation, tinea pedis, [and a] history of hunger" which have been "exacerbated due to continued detention." *Id.* Also, there is no indication that Petitioner has any criminal history. *See* Docket. The Court finds that this factor also weighs in favor of Petitioner.

The fourth and fifth *Banda* factors look to the nature and extent of any delays in the removal proceedings caused the petitioner and then the government respectively. *Banda*,

385 F. Supp. 3d at 1119-1120. There is no indication in any of the filings before the Court that either Petitioner or Respondents caused any delays in the proceedings. Thus, the Court finds that both of these factors are neutral.

The sixth *Banda* factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal."). Here, Petitioner has in his favor a positive credible fear determination, but there is no other information provided to the Court regarding how an IJ would eventually rule on his removal proceeding. Thus, the Court finds this factor mostly neutral, weighing at most only slightly in favor of Petitioner.

In summary, at least three of the six factors weigh in favor Petitioner, with the other factors being neutral. Accordingly, the Court concludes that Petitioner's year-long detention under § 1225(b) has become unreasonable and due process requires the Government to provide him with an individualized bond hearing at this time.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

1. The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **seven days** of this Order. At the hearing, the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released.[2]

---

[2] As courts have recognized, due process violations on this ground entitles Petitioner to a "a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Sadeqi*, 2025 WL 3154520, at *4 (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) and *Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024)); *see also Kadir*, 2025 WL 2932654, at *6 (ordering similar relief, including specifying proper standards to be applied at bond hearing; *Idiev v.*

2.  The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated:  January 14, 2026

_____
Honorable Linda Lopez
United States District Judge

---

*Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-01030-SKO (HC), 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) (ordering bond hearing where "the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community").